HAWTHORNE, Justice.
 

 Plaintiff, White System of New Orleans, Inc., alleging itself to be the holder and owner before maturity and for value of a certain promissory note, instituted this suit against the defendants, Willie Mae Hall and Frank Hall, as makers thereof, seeking judgment for the face amount -of the note.
 

 The defendants admitted the execution of the note, but denied that plaintiff was a holder in due course thereof. They alleged that the note was given as evidence of the balance due on the purchase price of a beer cooler, which was defective and unfit
 
 *443
 
 for the purpose for which it • was sold. They prayed that the sale be rescinded in its entirety for failure of consideration and that plaintiffs suit be dismissed.
 

 Judgment was rendered in the district court as prayed for by plaintiff and was affirmed by the Court of Appeal for the Parish of Orleans. See 45 So.2d 649. The matter is now before us under our supervisory jurisdiction.
 

 Frank J. Tully, doing business as Fluorescent Lighting and Refrigeration Sales, sold and delivered to defendants, Frank and Willie Mae Hall, a beverage cooler. As evidence of the credit portion of the purchase price plus interest and carrying charges, the defendants executed their promissory note in the sum of $609.65, payable to the order of bearer in 17 installments. The note was paraphed “Ne Varietur” to identify it with an act of sale and chattel mortgage executed by defendants. Tully then sold and delivered the note to plaintiff, White System of New Orleans, Inc., for $490.00 cash. Plaintiff before purchasing the note required that Tully affix his name to the note as additional security so that, if defendants defaulted, it could demand payment from Tully. Tully accordingly signed the note on its face above the signatures of the makers, Frank and Willie Mae Hall.
 

 It is the contention of defendants-relators that Tully is a comaker of the note, and that plaintiff is the first bearer and payee thereof and under these circumstances cannot bé a holder in due course.
 

 Tully’s signature on the face of the note, written just above the signatures of the defendants, the makers thereof, does not necessarily'constitute him a maker of the note.. Indorsements are usually and customarily written on the back of a note, but the writing of them in that particular place is not essential to a valid transfer of the note. Act 64 of 1904, Section 31, LSA-R.S. 7:31, provides that the indorsements must be written on the instrument itself or upon a paper attached thereto, and that the signature of the indorser without additional words is a sufficient indorsement. The act therefore does not provide or designate any particular place on the note for an indorsement to be written. Furthermore, Section 30 of the same act, LSA-R.S. 7:30, provides that, if a note is payable to bearer, it is negotiated by delivery. Under the facts in the instant case, since the note was payable to bearer, it was negotiated by the defendants, Frank and Willie Mae Hall, by delivery to the seller of the beverage cooler, Frank J. Tully. He thereafter sold and delivered the note to plaintiff for value, the sum of $490.00 paid to him in cash, and he at that tftne was required to sign his name to the note as an additional security. Under the facts and circumstances the effect of Tully’s signature was to constitute him, not a maker, but an indorser with recourse.
 

 
 *445
 
 Defendants also contend that plaintiff was an immediate party to the note for the reason that it directed the whole transaction, and thus took the note subject to any equities or defenses existing in favor of the defendants and against the vendor of the cooler.
 

 The evidence in* this case does not support this contention. The note and the chattel mortgage were executed on forms furnished by plaintiff, and the interest, carrying charges, and installments were computed from tables furnished by it, and, further, plaintiff agreed to finance the transaction or purchase the note prior' to the time the sale was actually made. Plaintiff did not, however, have any business dealings with defendants. In fact, defendants did not even know that the White System had acquired the note until some time after its execution by them, and also after the execution of the sale and the chattel mortgage. Defendants do not contend, and there is no evidence in the record to indicate, that plaintiff knew Tully was delivering or selling to these defendants a defective box, if the box actually was defective. The evidence is conclusive that Tully owned no interest in plaintiff’s business and was not connected with its business in any way.
 

 Section 52 of Act 64 of 1904, LSA-RS 7:52, provides that a holder in due 'course is a holder who has taken the instrument under the following conditions: That it is complete and regular upon its face; that he became the holder of it' before it was overdue, and without notice that it had been previously dishonored, if such was the fact; that he took it in good faith and for value; that, at the time it was negotiated to him, he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. Section 57 of the same act, LSA-RS 7:57, provides that a holder in due course holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon.
 

 The evidence in the instant case conclusively shows that plaintiff acquired the note under all of such conditions, and therefore by the very terms of the Negotiable Instruments Act it is a holder in due course and may enforce payment of the note against the defendants.
 

 In support of their second contention defendants cite and rely on the cases of General Motors Acceptance Corporation v. Swain, La.App., 1st Cir., 176 So. 636; C. I. T. Corporation v. Emmons, La.App., 2nd Cir., 197 So. 662; International Harvester Co. v. Carruth et al., La.App., 1st Cir., 23 So.2d 473, and Citizens Loan Corporation v. Robbins, La.App., 2nd Cir., 40 So. 2d 503. The Swain, Emmonsj and Carruth cases, however, do not support defendants’ contention.
 

 
 *447
 
 In the Swain case the defense was that the plaintiff was not a holder in due course, and that the note was illegal, null, and void because a greater rate of interest was charged on the cash price of the car there sold than allowed by law. In that case the court found that the seller of the car computed the interest from charts furnished by the holder of the note, and that, if there was an infirmity in the note on account of usury, plaintiff was fully aware of this fact, and this would be a good defense against the action of plaintiff on the note.
 

 In the Emmons case the plaintiff, the holder of a note secured by a chattel mortgage on a refrigerator, instituted suit against the maker thereof after the refrigerator had been destroyed by. fire. The court found that plaintiff had directed the execution of the note and the chattel mortgage and had given its instructions as to finance charges and the amount of monthly installments, which included a sufficient amount for obtaining insurance on the refrigerator. The defense was that the plaintiff was not a holder in due course, and that the note was, or should have been, fully paid and satisfied from the proceeds of the insurance. In affirming a judgment for the defendant the court stated that plaintiff had full knowledge of defendant’s contracting to pay a sufficient amount for the insurance, and that consequently plaintiff stood in the shoes of the seller, quoting from 10 C.J.S., Bills and Notes, § 323, as follows: “Actual knowledge of defenses or of equities precludes a transferee from attaining the position of a holder in due course, although he paid full value for the instrument.”
 

 In the Carruth case the court found that the holder of the note was not a holder in due course for the reason that it was a party to the transaction since the dealer or seller of the instrumentality was acting as the plaintiff’s agent.
 

 The instant case is distinguishable from those cases because the plaintiff here had no knowledge that the box was defective in any way, if it actually was defective.
 

 In the Robbins case the act of sale and the note sued on were prepared by plaintiff, the holder of the note. The payment of the note was secured by a chattel mortgage on an automobile sold by one Hunter to Robbins. Plaintiff, alleging itself to be a holder in due course, instituted suit on the note, and the defense was that it was not a holder in due course and therefore was answerable for the alleged redhibitory vices and defects in the automobile sold by Hufter. The Court of Appeal concluded that the plaintiff was precluded from claiming the protection accorded a holder in due course under the facts and circumstances of the case and cited in support of this conclusion the Swain, Emmons, and Carruth cases. In our opinion the cases cited are not authority for the holding in the Robbins case and are clearly distinguishable therefrom, just as they are from the instant case. In
 
 *449
 
 our opinion the holder of the note in the Robbins case was a holder in due course, as that term is used in the Negotiable Instruments Law, and for this reason we do not consider the decision to be sound.
 

 Counsel for defendants have cited several cases from other jurisdictions wherein the courts refuse to recognize that finance companies may be holders in due course in installment credit sales. Commercial Credit Corporation v. Orange County Machine Works et al., 34 Cal.2d 766, 214 P.2d 819; Commercial Credit Co. v. Childs, 199 Ark. 1073, 137 S.W.2d 260, 128 A.L.R. 726; Buffalo Industrial Bank v. De Marzio, 162 Misc. 742, 296 N.Y.S. 783, reversed on other grounds 6 N.Y.S.2d 568. See also Adelson, The Mechanics of the Instalment Credit Sale, 2 Law and Contemporary Problems, 218, 225; Note, 53 Harv.L.Rev. 1200; Note, 57 Yale L.Jour. 1414; Note, 25 St.John’s L.Rev. 107. The basis of those decisions is a feeling by the judiciary that, by using the Negotiable Instruments Law as a shield, the finance company is given an unfair advantage over the consumer buyer. There is undoubtedly some justification for this view, but steps to equalize their positions and regulate installment credit sales should be taken by the Legislature, and not by this court in view of the clear provisions of the Negotiable Instruments Law.
 

 Since we have concluded that plaintiff in the instant case is a holder in due course, it is immaterial whether the cooler was defective or not.
 

 For the reasons assigned, the judgment of the Court of Appeal is affirmed; relators to pay all costs.